857 F.2d 1469
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
George MONGE, Petitioner-Appellant,
v.
Jeffrey J. CLARK, Warden; Benjamin F. Baer, Respondents-Appellee.
 No. 87-7630.
 United States Court of Appeals, Fourth Circuit.
 Argued: Feb. 5, 1988.
Decided: Aug. 30, 1988.
 
 Robert Edward Precht (The Legal Aid Society, Federal Defender Services Unit; Thomas Carr; Miller, Cassidy, Larroca & Lewin, on brief), for appellant.
 Michael Alexander Stover, U.S. Parole Commission (Patrick J. Glynn, General Counsel, U.S. Parole Commission; Henry E. Hudson, United States Attorney; G. Wingate Grant, Assistant United States Attorney, on brief), for appellee.
 Before WILKINSON, Circuit Judge, HAYNSWORTH, Senior Circuit Judge, and THOMAS SELBY ELLIS, III, United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 After serving a small portion of a federal sentence for obstructing commerce by extortion in violation of 18 U.S.C. Sec. 1951, Monge was released on parole. In September 1985, his parole officer sought a revocation of the parole. He reported to the Parole Commission that Monge had assaulted Paul Doran with lead pipes and golf clubs. Monge attacked the revocation of his parole upon the ground that findings of the parole violations were not adequately supported and that the revocation proceedings were in violation of his constitutional rights.
 
 
 2
 In his initial trial, Monge was found to have been the "strong-arm" man in a protection racket that was extorting money from topless bars in Manhattan. After his release on parole, his parole officer requested a warrant for parole violation. He reported that Monge had attacked Paul Doran with lead pipes and golf clubs.
 
 
 3
 Shortly after the alleged assault, Monge was arrested in a blue van at the scene of the assault. In the van were lead pipes and golf clubs, and a passenger, a friend of Monge's, who admitted to having been a participant to the assault upon Doran.
 
 
 4
 Shortly after his arrest, Monge was taken to the police station where one witness testified to having seen Monge beating Doran with a lead pipe and a chain. Several other witnesses said they had seen Monge at the scene.
 
 
 5
 State criminal charges against Monge were dismissed when the prosecution witnesses recanted their stories. The arresting officers reported that the victim and others had been receiving threatening telephone calls.
 
 
 6
 At the parole revocation hearing, no eyewitness was produced to testify against Monge. The arresting officers presented the written statements of the eyewitnesses and the criminal complaint signed by the one who had said he had actually seen Monge beating Doran with a lead pipe and a chain.
 
 
 7
 Monge requested that that witness be produced for cross-examination. The request was denied, but Monge at no time sought to call the witness as his own.
 
 
 8
 After the conclusion of the administrative proceedings during which his parole was revoked, Monge sought relief in the district court upon the ground that his right of confrontation was denied when the principal witness against him was not produced for cross-examination and the arresting officers' memorandum book was not produced. Monge claimed a violation of his due process right because of reliance by the Commission upon what Monge describes as unreliable hearsay.
 
 
 9
 We find no infirmity in the parole revocation proceeding.
 
 
 10
 In Morrissey v. Brewer, 408 U.S. 471, 489 (1972), it was held that one charged with parole violation has a right of confrontation unless the hearing officer specifically finds good cause for not allowing it. In this case, the hearing officer found that the state criminal charges in the case had been dismissed because potential prosecution witnesses and their families had received threatening telephone calls.
 
 
 11
 Moreover, there were substantial guarantees of trustworthiness of the hearsay testimony. The several witnesses who testified at the police station that they had seen Monge at the scene were in agreement. The one who specifically testified there that he had seen Monge beat Doran with a lead pipe and a chain had made the same accusation in more formal and reliable circumstances. He had sworn to the fact in a criminal complaint and had testified under oath to that fact before the grand jury.
 
 
 12
 At the time of his arrest, Monge was in the blue van in which there were lead pipes and golf clubs, and a companion who was an admitted participant in the assault.
 
 
 13
 We think the finding of a parole violation was sufficiently supported, and we find no violation of Monge's constitutional rights.
 
 
 14
 AFFIRMED.